Calvin HINTON, Employee/Respondent,

v.

BOHLING VAN & STORAGE COMPANY, Employer/Appellant.

No. 57942.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 18, 1990.

James Dailey Wahl, St. Louis, for employer/appellant.

Ronald Boyd Wessel, Clayton, for employee/respondent.

GRIMM, Judge.

In this worker's compensation case, Bohling Van & Storage Company appeals from a determination that claimant Calvin Hinton was its employee. As its sole point on appeal, company contends the Labor and Industrial Relations Commission erred in finding Hinton was an employee rather than an independent contractor. We affirm.

## I. Background

Claimant was the sole witness at the hearing. He testified he began working for company in July, 1981, and continued doing so until he was injured in 1985. During his first two weeks with the company, he worked on the company's premises. Then, Mr. Bohling came to him and asked him to be an over-the-road driver. As a result, claimant's pay changed from an hourly rate "to a commission form of pay."

At that time, Mr. Bohling went over the rules with claimant. Mr. Bohling told him: "These are your orders." Bohling would load claimant, but then claimant was to "call Wheaton Van Lines every day for [his] orders after [he left] here."

Company furnished the tractor and trailer for claimant to drive; Mr. Bohling told claimant that only claimant was to drive it. Company or Wheaton's permission was required before claimant could allow others to ride with him. If an emergency arose and claimant was unable to drive, claimant had to get Mr. Bohling's permission before anyone else could drive it.

If the tractor or trailer broke down, claimant was to call Mr. Bohling. He would tell claimant where to take the tractor or trailer for repairs. Claimant was responsible for the first one hundred dollars of repairs; company would pay the rest.

In addition to the tractor and trailer, company furnished other equipment. This equipment included pads, straps, dollies, and a walk board.

Mr. Bohling told claimant "We have workmen's comp.... I'm going to have that for every man on the van. It covers every man, everybody, ... and I will take it out of your pay every month. You will see that on your statement." Although workers' compensation payments were taken out of his pay throughout the four years, Mr. Bohling never told claimant he was covering only the people working with claimant and not him.

Claimant and company entered into a written agreement four months later. The eight page agreement, among other things, stated that claimant "shall be an independent contractor only and shall not be an employee of the Company for any purpose whatsoever." It also says claimant "shall comply with the rules and regulations ... with respect to providing workmen's compensation insurance ... for his drivers and helpers, ... at his own expense."

The day-to-day details of claimant's relationship with company involve a third party, Wheaton Van Lines. A sign at company's headquarters indicated company was

an agent of Wheaton. Claimant wore a Wheaton uniform and although company owned the tractor-trailer unit claimant drove, it had "Wheaton" printed on its side.

By Mr. Bohling's orders, claimant reported to Wheaton rather than company on many matters. He received his assignments from other agents of Wheaton, and he telephoned Wheaton's offices from one to six times per day. When he needed to work past 5:00 p.m., he was required to telephone Wheaton (or possibly company) in order to obtain permission to do so.

Claimant's twice monthly paychecks came from company. If any of the cargo claimant moved was damaged, claimant had to call Wheaton. Wheaton and Mr. Bohling determined the amount claimant was to pay for the damage. Company then charged that amount to claimant and deducted it from his check.

On May 13, 1985, claimant suffered a hip injury while attempting to hook the tractor to the trailer. Claimant sought, and was awarded, workers' compensation benefits.

## II. Employee or Independent Contractor

■ Company contends the classification of claimant as an employee is erroneous; because "there was a signed, written agreement for [claimant] to perform as an independent contractor," and claimant "held the 'right to control' virtually all the details of his work activities." We disagree. A contract designating claimant as an independent contractor "is not conclusive when there is evidence" the employer had the right to control the manner in which the work was performed. *Miller v. Hirschbach Motor Lines, Inc.,* 714 S.W.2d 652, 656 (Mo.App.S.D.1986).

■ An "employee" is a "person in the service of any employer ... under any contract of hire, express or implied, oral or written...." § 287.020.1.[1] "The employer-employee relationship by the statutory definition rests on *service,* construed by judicial definition to mean *controllable service." Miller,* 714 S.W.2d at 656. (emphasis original).

■ Several factors determine whether company had a right to control the manner in which claimant performed the work. They are: (1) the extent of company's control over claimant, (2) the actual exercise of control, (3) the duration of claimant's employment, (4) the method of payment for claimant's services, (5) the degree to which company furnished the equipment, (6) the extent to which claimant's work is part of company's regular business, and (7) the contract of employment. *Howard v. Winebrenner,* 499 S.W.2d 389, 395 (Mo.Div. 1 1973). None of these factors are individually controlling, but each is relevant to the issue. *Id.*

■ In applying these factors, we note Mr. Bohling told claimant to contact Wheaton daily and follow their orders. Wheaton told claimant where to go; his work day was to end by 5 p.m. unless he got Wheaton's or company's permission to work later.

Here, claimant had worked exclusively and continuously for company and Wheaton for almost four years when he sustained his injury. Company paid claimant for his services twice a month on a commission basis. Company furnished all the equipment claimant used, with the exception of a few small hand tools. Company, as its name indicates, is a van and storage business; claimant's work is entirely and clearly a part of company's regular business. These factors tend to indicate claimant was an employee. On the other hand, his contract of employment stated claimant was an independent contractor.

In *Miller,* our Southern District colleagues were faced with a similar question involving an over-the-road driver. There, the driver worked for the company for five years. Like the agreement here, the agreement in *Miller* designated the driver as an independent contractor. And, as here, the driver was paid "by the job" rather than by the hour.

Basically, there is one primary difference between the facts in *Miller* and those here.

---

**1.** All statutory references are to RSMo 1986.

In *Miller*, the driver provided his own truck and equipment; here, company provided the truck and all equipment, except small hand tools. In *Miller*, the Southern District found the driver to be an employee of the company. *Miller*, 714 S.W.2d at 659.

Here, the facts and law support the commission's determination claimant was company's employee within the meaning of § 287.020.1. Our conclusion is supported by the holding in *Miller*. It is also supported by Professor Arthur Larson's treatise on workers' compensation. He writes, "When it is the employer who furnishes the equipment, the inference of right of control is a matter of common sense and business. The owner of a [truck] who entrusts it to a driver is naturally going to dictate details such as speed, maintenance, and the like, in order to protect his investment." Hence, he concludes "it is not surprising that there seems to be no case on record in which the employer owned the truck but the driver was held to be an independent contractor." 1C A. LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 44.34(b) (1990).

We acknowledge, however, a factor here which was not present in *Miller;* a third party exercised control over claimant. Wheaton interacted with claimant on a day-to-day basis more than company did.

However, it is the right to control rather than the exercise of control which is important. *Fisher v. Hennessey*, 329 S.W.2d 225, 227 (Mo.App.W.D.1959). Company directed claimant to follow Wheaton's orders regarding the way in which claimant's work should be accomplished. This ability to delegate authority to Wheaton strongly suggests company had the right to control the manner in which claimant performed.

Additionally, we note claimant's agreement was with company, not Wheaton. Company paid claimant's salary and company negotiated all damage claims. Also, company owned virtually all the equipment claimant used. Based on these facts, as well as others previously mentioned, claim-ant clearly owed his allegiance to company rather than Wheaton. Claimant was company's employee and his relationship with Wheaton does not make claimant an independent contractor.

Finally, we address company's contention the employment contract which claimant signed requires us to find claimant was an independent contractor. Though relevant to the determination, the agreement is not controlling. *Miller*, 714 S.W.2d at 656. "[I]t is the actual conduct of the parties, not the language of the written contract, which establishes the work status of a particular worker." *Id.* at 657.

Here, the parties conduct establishes claimant was an employee. The contract language, standing alone, cannot be used to defeat the legislative command that workers' compensation benefits be extended to the largest possible class of workers. *Id.*

The judgment is affirmed.[2]

PUDLOWSKI, P.J., and KAROHL, J., concur.

---

**2.** Claimant's brief suggests company's appeal was frivolous and asks for damages under Rule 84.19. The request is denied. The issue compa-ny raised was fairly debatable. *Brooks v. General Motors Assembly Division*, 527 S.W.2d 50, 54 (Mo.App.E.D.1975).