**Betty Smith OTT, Appellant,**

v.

**CONSOLIDATED UNDERWRITERS and The Kansas City Club, a Corporation, Respondents.**

No. 22711.

Kansas City Court of Appeals.

Missouri.

March 3, 1958.

Dwight Roberts, Kansas City, for appellant.

R. Robert Cohn, Kansas City, for respondents.

HUNTER, Judge.

This is an appeal from the judgment of the circuit court affirming the award of the Industrial Commission denying compensation to Betty Smith Ott, claimant-appellant, in her claim against the Kansas City Club and Consolidated Underwriters, respondents.

Only two questions are presented on this appeal. The first is whether or not appellant was an employee of respondent Kansas City Club within the meaning of the Workmen's Compensation Act when her accident and resultant injuries occurred. The second question is, did her accident arise out of and in the course of her claimed employment with the Kansas City Club.

The following facts are undisputed. The Kansas City Club, an employer operating under the provisions of the Workmen's Compensation Law, ran an ad in the newspaper for a food checker. Claimant saw that ad and decided to apply for the job.

On the morning of April 9, 1952, about 10:00 a. m., she went to the Kansas City Club building, located in downtown Kansas City. She entered the club building at its main entrance on Baltimore Avenue, and stated her business to a bell hop who met her at the door. She asked to see the auditor, who according to her testimony, is the one who customarily hires food checkers. She was taken to the auditor. She talked with him briefly, and he called in Myrtle Curfman, another employee of the club. Mrs. Curfman talked with claimant about her experience and her references, and left the room to check her references. In a short time Mrs. Curfman returned and took claimant back to the auditor's office. She was informed that her references were satisfactory. She was given a written application for employment as food checker which she signed. She was also given an "employment contract" which both she and the respondent club signed. This contract, among other things, provided "The Kansas City Club does not employ me for any specified length of time, but only such time as my services may be required. * * * It is understood that my starting salary is $120 per month." Claimant also filled out and signed the usual Government Form W-4, the withholding exemption certificate. As to what next occurred, we refer to claimant's testimony:

"Q. After you had signed these papers, was there any discussion as to when you were to come to work? A. Yes, sir; she and the auditor talked about it; and they talked about having me come to work on Friday; and, then, decided to have me start that day.

"Q. At what time? A. I was to report back at 3:00 in the afternoon.

"Q. Did you agree to come to work at 3:00 in the afternoon? A. Yes."

Mrs. Curfman had a time card filled out for claimant, told her of a group insurance policy that at a future date would cover claimant; and "she showed me through the back of the Kansas City Club, to a certain extent; and, discussed where I would work, and what I would do. * * * I was told to use the back entrance to leave, and enter the Kansas City Club."

On cross-examination she was asked: "And you didn't punch the time clock? No, sir; they only made the time card out; and it was not to be punched in until 3:00 o'clock."

As to how the accident occurred claimant testified, "(Mrs. Curfman) walked from the time clock over to the first door with me; and she said: "I will see you at 3:00 o'clock;" and, then, she said: "Just a minute;" and, she told the timekeeper; she said: "When this lady comes back in at 3:00 o'clock call me;" and, he said: "All right." And, she said: "You go out this door;" and "I went through the first door, and went through the second door, and, fell." (Down a flight of steps sustaining severe injuries.) It was then approximately 10:35 a. m. At the close of the hearing the referee found "that said accident was not an incident of nor did it arise out of and in the course of any employment with the Kansas City Club, her alleged employer, within the meaning of the Workmen's Compensation Law." On appeal the Industrial Commission ruled:

"We find from all the evidence that the claimant, Mrs. Betty Smith Ott, was not an employee of the Kansas City Club on April 9, 1952, when she sustained an accident on the premises of the Kansas City Club even though she had entered into a contract of employment with the Kansas City Club prior to the time of the accident, because she testified in depositions taken in connection with a common law action that she had against the Kansas City Club, arising out of the same accident, that she was going to seek other employment and a better job if possible. We find from all the evidence that the accident she sustained on April 9, 1952, did occur on the premises of the Kansas City Club. We further find from all the evidence that the claimant

settled her common law action against the Kansas City Club for the sum of $1,050. We further find from all the evidence that this settlement of her common law action was made after the filing of her claim for workmen's compensation in this case. Compensation, therefore, must be and the same is hereby denied."

One member of the commission dissented on the ground he believed she had become an employee and was entitled to compensation for her injuries received while leaving the premises.

We first turn to those portions of the transcript that are involved in the finding of the majority of the Commission that by deposition she had testified she was going to seek other employment and a better job if possible. Claimant's counsel says this finding is not supported by any competent or substantial evidence.

According to the transcript, after her accident claimant's prior counsel filed a common law action based on negligence against the Kansas City Club on her behalf for damages for her injuries sustained in her fall down the steps. In connection with that suit claimant's deposition was taken several times. She refused to sign them claiming they were not accurate. At her compensation hearing before the referee she was read numerous questions and answers contained in those depositions which indicated she had not unconditionally accepted the employment with the Kansas City Club but rather had a prior appointment to go immediately from her Kansas City Club interview to a hotel for an interview for a job, and if she obtained that job she did not plan on returning to the Kansas City Club for work. After these long portions of those depositions, including numerous questions and answers, were read to plaintiff and she was finally asked if she had made those answers to those questions she replied, "I could not repeat the questions, and I could not remember the answers that were given. I have tried to explain to you what happened; and, further

than that I can't recall." Her testimony before the referee was that she was to be interviewed for another job with hours that did not conflict with those of the Kansas City Club employment; that she needed both jobs since the Kansas City Club job pay was so small, and that it was her intention to return at 3:00 and work at the Kansas City Club.

The unsigned depositions were not in evidence. Neither the reporter who took and transcribed them nor anyone else was a witness to prove that claimant made the statements respondents were attempting to attribute to her. Claimant did not admit she was asked those questions and made those answers. Thus, there was no competent and substantial evidence before the referee and commission from which the commission could find that claimant did not intend to return to the Kansas City Club at 3:00 o'clock for work under her contract of employment, and in making our determination as to whether or not claimant was covered by the act, we do not consider the referred to material from the depositions.

■ Nonetheless the Industrial Commission has made its ultimate finding that claimant was not within the coverage of the act when she was injured and we must follow the long-established rule that claimant as the one who wishes to bring herself within the applicability of the Workmen's Compensation Act has the burden of proof of showing that she is within its terms. Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 499.

■ We turn to the basic and critical question in this case, namely, was plaintiff while on the premises of the Kansas City Club an employee of that club within the meaning of the Workmen's Compensation Act and ever, even for one moment, under the coverage of that act. If so, and if her injuries arose out of and in the course of her employment, respondents tacitly concede that she is entitled to compensation as is any employee injured while still on the employer's premises and in the act of leav-

ing those premises. Metting v. Lehr Construction Co., 225 Mo.App. 1152, 32 S.W.2d 121, 124; Garrison v. U. S. Cartridge Co., Mo.App., 197 S.W.2d 675, 676. Murphy v. Wells-Lamont-Smith Corp., Mo.App., 155 S.W.2d 284. It is well established by judicial decision that an employee who is within the coverage of the Workmen's Compensation Act ordinarily remains under the coverage of that act while leaving the premises of his employer. Under such circumstances the act of leaving the employer's premises after the work is done is considered a risk connected with the employment and is incidental to the employment. Murphy v. Wells-Lamont-Smith Corp., supra; Metting v. Lehr Construction Co., supra; Gardner v. Stout, 342 Mo. 1206, 119 S.W.2d 790. In Murphy v. Wells, supra, 155 S.W.2d loc. cit. 287, 288, the court quoted with approval from the opinion in the case of Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, wherein the United States Supreme Court said: "And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, *to or from his work* by a way over the employer's premises * * * the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance." (Italics ours.) See also Donzelot v. Park Drug Co., Mo.App., 239 S.W.2d 526; 1 Larson, Workmen's Compensation, Sec. 15. The to or from work rule is so liberal that as stated in the Gardner case, supra, 119 S.W.2d loc. cit. 793, "Whether an employee voluntarily quits his employment or is discharged by his employer, such employee is entitled to a reasonable time to leave the premises of his employer, before it can be said that the relation of employer and employee is so completely severed as to render inapplicable the law which governed that relation."

It is equally well established by judicial decision, and certainly required by our statute on the subject (Section 287.020, V.A.M.S.) that in a case such as this prior to the employer-employee relationship arising between the parties there is no coverage afforded the injured party by the Workmen's Compensation Act. Knupp v. Potashnick Truck Service, Mo.App., 135 S.W.2d 1084; McQuerrey v. Smith St. John Mfg. Co., 240 Mo.App. 720, 216 S.W.2d 534. Thus, if claimant's visit to the club had not resulted in her employment and she had been injured in leaving the club's premises she would not have been within the coverage of the act.

Did the bare act of both she and the club entering into a contract for her employment with the commencement of her service, duties and work thereunder to be at a future time cause her to then come within the coverage of the act. We think not. Section 287.020(1), V.A.M.S. of the act defines an employee as "every person *in the service* of an employer * * * under any contract of hire * * *." Subsection (5) provides, "without otherwise affecting either the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of such employment,' it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties *are* being performed, or where their *services* require their presence as a part of such service." Section 287.030(1) defines employer as "every person * * * *using the service of* another for pay." (Emphasis ours.) We acknowledge that in interpreting the act we must construe it liberally with a view to the public welfare, and that this means with a liberality calculated to effectuate its purpose and so as to extend its benefits to the largest possible class and restrict those excluded to the smallest possible class. Section 287.800, V.A.M.S.; Dost v. Pevely Dairy Company, Mo.Sup., 273 S.W.2d 242. This does not mean that we may unreasonably construe the act so as to find coverage where coverage is not

provided. Mershon v. Missouri Public Service Corp., 359 Mo. 257, 221 S.W.2d 165; McQuerrey v. Smith St. John Mfg. Co., supra; Fowler v. Baalmann, Mo.Sup., 234 S.W.2d 11. It is our view of the statutory provisions that the legislature did not intend thereby to place within the protection of the Workmen's Compensation Act those who have done no more than merely contract to perform at a future date services, work and duties, and who are injured prior to the initial commencement of those services, duties and work, and while they are not on their way to commence the performance of those services, duties and work. Such persons are not and never have been *in the service* of the employer. Nor under the liberal construction of our courts whereby they include, as discussed above, the going to or from work under certain circumstances as an integral part of the work, duties, or service can they qualify as "in the service" for they are not going to or from work. Their remedy for compensation for their injuries remains under the general law, such as for negligence.

■ However, in the instant case we have an important additional consideration; namely, did anything occur after the signing of the contract to bring claimant within the coverage of the act. It is undisputed that *after* the contract of employment was signed the Kansas City Club through its employee, Mrs. Curfman, kept claimant on the club's premises approximately twenty minutes to explain her duties to her and to show her where she would perform those duties. Its employee filled out claimant's time card and instructed claimant to use the rear entrance when entering or leaving the club. When injured she was still on the premises and was in the act of leaving by the exact route respondent club had directed her to take. When respondent club, after the employment contract was signed, in effect detained claimant on the premises for approximately twenty minutes and undertook to instruct her concerning her duties as an employee and to show her the work premises, we conclude that it did so in the

employer-employee relationship and that during that time she was "in the service of (the) employer" within the meaning of the cited statute. For on what other basis can it reasonably be said that she was so detained? She was no longer seeking the employment. She had obtained it. The named employer as an employer had taken charge of her to serve the employer's purpose and desire to instruct her in her work duties, and to show her around the work premises. Had she been injured while being so instructed and shown around it is our view that she would have been covered by the Act as being "in the service of any employer." Cf. Warren's Case, 326 Mass. 718, 97 N.E.2d 184; Alewine v. Tobin Quarries, 206 S.C. 103, 33 S.E.2d 81; Blair v. Armour and Company, Mo.App., 306 S.W.2d 84. Having in mind the specific provisions of the Workmen's Compensation Act wherein the legislature in its wisdom provided that the provisions of the act shall be liberally construed with a view to the public welfare, and being aware that our Supreme Court has interpreted this to mean that the act should be construed with a liberality calculated to effect its purpose and so as to extend its benefits to the largest possible class and restrict those excluded to the smallest possible class, we have concluded that claimant was an employee and in the service of an employer all within the meaning of the act when her injury occurred. Also for the reasons heretofore given in this opinion we hold that her resultant injuries did arise out of and in the course of her employment.

What we have said above is based on the record now before us, and based on that record, the judgment of the circuit court affirming the order of the Industrial Commission should be and is reversed, and this cause is remanded to the circuit court with instructions to reverse the findings of the Industrial Commission and to remand the cause to the Industrial Commission for a rehearing of this claim.

It is so ordered.

All concur.